IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DZEVAD HUREM, <br>               Plaintiff, <br> v. <br><br> NASREEN QUADRI, MOSHIM QUADRI, <br> CHICAGO POLICE OFFICERS; NICKOLAS <br> TAVARES, JOHN DINEEN, LILLIAN <br> BEDIA, CAROL FONTANETTA, HECTOR <br> DAVILA, <br>               Defendants. | 11 C 1418 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dzevad Hurem filed this suit against Nasreen and Moshim Quadri and City of Chicago Police Officers Nickolas Tavares, John Dineen, Lillian Bedia, Carol Fontanetta, and Hector Davila ("the Officers") pursuant to 42 U.S.C. § 1983, Illinois state law, and the Municipal Code of the City of Chicago. Hurem's Complaint alleges (1) "Deprivation of Property" (Count I) in violation of the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101, and the City of Chicago Residential Landlord Tenant Ordinance, 5-12-160; and (2) "Deprivation of Liberty" (false arrest) (Count II) and excessive force (Counts III and IV) in violation of 42 U.S.C. § 1983. Each of the four counts is pleaded against the Officers while the Quadris were alleged only to be responsible for Counts I and II. Specifically, Hurem alleges that he was living in an apartment legally based on an oral lease agreement with the Quadris when he was forcefully evicted by the Officers. After his arrest, Hurem suffered a major heart attack and was hospitalized for over one week. Hurem claims that the Officers caused that heart attack after Officers Bedia and

Fontanetta forcefully kneed him in the chest and the remaining officers failed to intervene or otherwise protect him. The civilian defendants have settled with Hurem and only the police officer defendants remain. The Officers have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment on Counts I, II, and IV of Hurem's Second Amended Complaint ("the Complaint"). For the reasons stated herein, the Court grants that motion.

## STATEMENT OF MATERIAL UNDISPUTED FACTS[1]

Nasreen Quadri ("Mrs. Quadri") purchased 6126 N. Damen Ave., apartment 3F, on October 4, 2011 from a foreclosure. (Def. 56.1 Resp. ¶ 12.) At some point subsequent to the purchase Mrs. Quadri was informed by the manager of the building at 6126 N. Damen Ave., Cagan Management, that the police were called to her apartment because individuals were drunk and fighting inside the unit. (Def. 56.1 Resp. ¶ 13.) Cagan Management indicated to Mrs. Quadri that it had not been informed that someone was living in the apartment, to which Mrs. Quadri responded by stating that no one was supposed to be living in the unit. *Id.*

Mrs. Quadri visited the unit on January 5, 2011 with realtor Daniel Ju and locksmith Kerry Douvikas. (*Id.* ¶ 14.) When Mrs. Quadri approached the apartment she encountered Hurem inside. (*Id.* ¶ 15.) Chicago Police Department Officers were called to the apartment. (*Id.* ¶ 16.) Hurem told the officers that he obtained keys to the apartment from the previous tenant and that he had paid Mrs. Quadri's husband, Mohsim Quadri, rent but had never been provided a receipt. (*Id.* ¶ 16.) When Hurem was asked to provide evidence that he lived in the apartment, he produced a piece of paper with Mr. Quadri's phone number on it. (Pl. 56.1 Resp. ¶ 10.) The

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Facts as follows: citations to Defendants' Statement of Facts (Dkt. No. 54) have been abbreviated to "Def. 56.1 St. ¶ __"; citations to Hurem's Statement of Material Facts (Dkt. No. 68) have been abbreviated to "Pl. 56.1 St. ¶ __"; citations to Defendants' Response to Hurem's Statement of Facts (Dkt. No. 73) have been abbreviated to "Def. 56.1 Resp. ¶ __"; and citations to Hurem's response to Defendants' Statement of Facts (Dkt. No. 67) have been abbreviated to "Pl. 56.1 Resp. ¶ __."

officers then instructed Mrs. Quadri to obtain legal counsel. (Pl. 56.1 Resp. ¶ 11.) The only officer at 6126 N. Damen Avenue that day who Hurem has sued in this case is Defendant Davila. (Def. 56.1 St. ¶ 18.) However, Officer Davila never entered the apartment nor was he informed about what had occurred inside. (*Id.*)

Two days later, Mrs. Quadri returned to the apartment accompanied by her husband, Daniel Ju, and Kerry Douvikas. (*Id.* ¶ 19.) Hurem was still living in the apartment and refused to leave, prompting Mr. Ju to call 911. (*Id.* ¶ 21.) Officers Bedia and Fontanetta were assigned by police dispatch to respond to the call and Officers Tavares, Davila, and Dineen responded as back-up officers. (*Id.* ¶ 22.) All five officers arrived at the apartment building and met the Quadris, Ju, and Douvikas outside. (*Id.* ¶ 24.) The Quadris showed paperwork to the Officers demonstrating ownership of the apartment and stated that the apartment should be vacant since neither of them knew Hurem. (*Id.*) The Officers then approached the apartment and asked Hurem for proof of residence. (*Id.* ¶ 25.) Hurem again stated that he was residing in the property but could not provide a lease for the apartment nor any bills or mail addressed to him at the 6126 N. Damen address. (*Id.* ¶ 32.) Hurem also did not provide any names of individuals who could support his assertion that he paid money to Mr. Quadri. (*Id.* ¶34.) Hurem did however state that he had paid rent to Mr. Quadri and had Mr. Quadri's phone number on a piece of paper. (Pl. 56.1 Resp. ¶ 28, 36.) Mr. Quadri stated that he did not receive any money from Hurem. *Id.* At that point the Officers gave Hurem the option to leave the apartment. (Def. 56.1 St. ¶ 37.) Hurem refused and was arrested on January 7, 2011 for criminal trespass to residence. (Def. 56.1 Resp. ¶ 38-39.)

After his arrest, Hurem was transported to the 24th District Police Station. (Def. 56.1 Resp. ¶ 41.) Hurem alleges that during his arrest and subsequent period in custody he was hit,

kneed, kicked, and struck by a female police officer. (Dkt. No. 26.) However, Hurem now agrees that Officer Fontanetta never kit, kneed, kicked, struck, or otherwise touched him. (Pl. 56.1 Resp. ¶¶ 46–47.) At the police station, Hurem began to complain of chest pains and was subsequently taken to St. Francis Hospital. (Def. 56.1 St. ¶ 41.) Hurem was eventually released from police custody directly to the medical facility due to the estimated duration of his hospital stay and the need for emergency surgery to address his chest pain. (*Id.* ¶ 42.) Mrs. Quadri was informed that Hurem was released from police custody and that if the Quadris wished to reinstate charges they could do so at a later date. (Def. 56.1 Resp. ¶ 43.) Mrs. Quadri was instructed to leave Hurem's property in the apartment; however she removed the items on January 16, 2011. (Def. 56.1 Resp. ¶ 44.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is warranted where no rational trier of fact could find for the non-moving party. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 64, 658 (7th Cir. 2001). *See also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). The Court is not required to "draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232 236 (7th Cir. 1991).

However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment. And adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining and Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## **DISCUSSION**

### I. **Deprivation of Liberty (False Arrest) – Count II**

Hurem claims that the Officers falsely arrested him without probable cause for criminal trespass to residence in violation of the Fourth Amendment of the United States Constitution and are therefore liable under 42 U.S.C. § 1983. Actions under section 1983 provide redress for constitutional violations committed under color of state law. *See* 42 U.S.C. § 1983. To recover for a constitutional violation under this cause of action, a plaintiff must show "(1) they were deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was visited upon them by a person or persons acting under color of state law." *McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006).

However, probable cause is a complete and absolute defense to a claim of unlawful arrest in violation of the Fourth Amendment. *Brooks v. City of Aurora*, 653 F.3d 478, 483 (7th Cir.

5

2011); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). The Court assesses probable cause objectively by looking "at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). Thus, if the officers had probable cause to arrest Hurem for any crime, his arrest was lawful. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004). "Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make that decision on summary judgment." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted); *see also Annan v. Village of Romeoville*, No. 12 C 3577, 2013 WL 673484, at *2 (N.D. Ill. Feb. 25, 2013) ("Although probable cause is often a mixed question of law and fact, it becomes a question of law when the undisputed facts are sufficient to create probable cause.") (citing *Ornelas v. United States*, 517 U.S. 690 (1996)).

The undisputed facts in this case demonstrate that the Officers had probable cause to arrest Hurem on January 7, 2011. The Seventh Circuit has held that an arresting officer who has "received information from a reasonably credible victim or eyewitness" need not conduct additional investigation before making an arrest, "even if sound police technique would have required further investigation." *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000). Indeed, "[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has further duty to investigate." *Beauchamp v. City of*

*Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *see also Woods*, 234 F.3d at 996 (identification or report from a credible victim or eyewitness, without more, can provide a basis for probable cause).

In this case, the Officers encountered the Quadris upon their arrival to the apartment building. There, the Quadris provided the Officers proof that they owned the property and indicated that the apartment should be vacant and that they did not know Hurem. The Quadris' account was supported by Ju, Mrs. Quadri's realtor, and Douvikas, a locksmith, both of whom had accompanied Mrs. Quadri to the apartment two days prior. The Officers then proceeded to speak with Hurem. Hurem, for his part, possessed no lease, no receipt for a deposit for the apartment, and no mail addressed to him at the 6126 N. Damen address. When asked for cancelled checks addressed to the location, he could provide none. Nor could Hurem name for the Officers a single individual who could attest to his right to live in Mrs. Quadri's unit. While Hurem had furniture in the apartment and a piece of paper with Mr. Quadri's phone number, there was nothing to demonstrate that he resided in the apartment by way of right and not simply by way of squatting or taking over the apartment from a previous owner without notice to others. Based on these undisputed facts, the Court finds that the Officers had objectively reasonable probable cause to arrest Hurem. *See, e.g., Gordon v. Degelmann*, 29 F.3d 295, 300 (7th Cir. 1994) (no constitutional violation where officers verified complainant's ownership interest in property and arrested complainant's ex-boyrfriend after he could not produce evidence of his interest in the home); *Wright v. Bogs Management, Inc.*, No. 98 C 2788, 2000 WL 1774046 (N.D. Ill. Dec. 1, 2000) (probable cause existed where officers received complaint from owner that plaintiff was trespassing on her property, verified ownership of the property, and viewed lease application and found that plaintiff's name was not on it). Therefore, the Court finds as a

matter of law that the Officers did not violate the Fourth Amendment when they arrested Hurem on January 7, 2011.

Even if the Officers were incorrect in determining they had probable cause to arrest Hurem, Hurem's false arrest claim fails because the doctrine of qualified immunity shields the Officers from liability. Qualified immunity bars liability against officials who perform discretionary functions in the course of their duties to the extent that their conduct does not violate "clearly established rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009). A plaintiff seeking to defeat the qualified immunity defense in a section 1983 action must show (1) that the plaintiff's rights were violated, and (2) that the law concerning the plaintiff's asserted right was clearly established at the time the challenged conduct occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

When qualified immunity is raised against a false arrest claim, courts consider whether "the officer actually had probable cause or, if there is no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Carmichael v. Village of Palatine*, 605 F.3d 451, 459 (7th Cir. 2010) (quoting *Williams v. Jaqlowski*, 269 F.3d 778, 781 (7th Cir. 2001)). Thus, qualified immunity applies not only to those officers who correctly determine probable cause exists, but also those officers who "reasonably but mistakenly conclude that it does." *Spiegal v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). This inquiry is referred to as "arguable" probable cause. "Arguable" probable cause exists when a "reasonable police officer in the same circumstances … possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Humphrey v. Staszak*, 148 F.3d 719, 725

(7th Cir. 1998) (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)) (emphasis omitted)).

Here, it is undisputed that the Officers were told by the Quadris that Hurem was residing in their property without authorization and were provided proof that Mrs. Quadri owned the property. It is also undisputed that the officers gave Hurem the opportunity to demonstrate his right to occupy the property and that Hurem could not produce a lease, a receipt for a deposit for the apartment, any mail addressed to him at the apartment, or cancelled checks addressed to the location. Any reasonable officer presented with these facts would believe he had probable cause to arrest Hurem. Therefore, the Officers are entitled to qualified immunity and Hurem's false arrest claim cannot be sustained against the Officers even if they were mistaken in concluding they had probable cause to arrest him.

Hurem nevertheless maintains that (1) the Officers could not have had probable cause to arrest him for criminal trespass to a residence because the Officers knew at the time they made their arrest that he was the sole inhabitant of the apartment and thus could not have possibly been occupying the "dwelling place of another" as required by Illinois's criminal trespass statute, and (2) the Officers are not entitled to qualified immunity because it was well established at the time of his arrest that the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101, provides the sole means for settling disputes over the possession of real property and thus renders it improper for a landlord to use the criminal trespass statute as a means of settling disputes over the right to possess land. Neither argument is persuasive.

Hurem's first argument is premised on the notion that the statute making unlawful the criminal trespass to a residence, 720 ILCS 5/19-4(a)(1), requires that the property to which the trespass is alleged to have occurred be inhabited by someone other than the trespasser. The

9

outcome of the Court's Fourth Amendment analysis does not change even assuming—without deciding—that this premise reflects a valid interpretation of the Illinois Criminal Code. Although "the existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law," *Abbott*, 705 F.3d at 714, "an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Id* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), and *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) ("[Defendants] correctly point out that an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charged the suspect.") (emphasis in original)). Therefore "to form a belief of probable cause, an arresting officer is not required … to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute." *Sroga v. Weiglen*, 649 F.3d 604, 609 (7th Cir. 2011) (quoting *Stokes v. Board of Education*, 599 F.3d 617, 622–23 (7th Cir. 2010)). In this case, the Officers arrested Hurem based on a credible complaint that Hurem did not have authorization to occupy the apartment unit located at 6126 N. Damen and based on documentation that the Quadris owned the unit. Thus the Officers, at a minimum, possessed probable cause to arrest Hurem for the arrest of criminal trespass to real property, which is defined in the Illinois Criminal Code as "knowingly and without lawful authority enter[ing] or remain[ing] within or on a building." 720 ILCS 5/21-3(a)(1). Accordingly, the proposition that Hurem could not have been prosecuted for criminal trespass to a residence is of little import for the purposes of the probable cause inquiry.

Hurem's reliance on the Illinois Forcible Entry and Detainer Act to support his false arrest claim is also misplaced. The Forcible Entry and Detainer Act states that in the event a person needs to be removed from a premises where he claims to be residing under a claim of right, he is entitled to the judicial hearing afforded by the statute before he may be removed as a trespasser. 735 ILCS 5/9-101; *People v. Evans*, 516 N.E.2d 817, 819 (1st Dist. 1987). However, the Seventh Circuit made clear in *Degelman v. Gordon* that an officer's violation of the Illinois Forcible Entry and Detainer Act does not rise to the level of a constitutional violation and is irrelevant to the Court's analysis under Fourth Amendment. *See* 29 F.3d at 300–01. In *Degelmann*, police received a complaint from the owner of a home that her ex-boyfriend, the plaintiff, was squatting at her house. *Id*. at 297. The police verified that the complainant had a legal right to the home and asked the plaintiff for proof of interest; he could provide none. *Id*. at 300. The plaintiff was arrested but charges were later dismissed because of a violation of the false detainer statute. In affirming that the officer involved in the arrest had not violated the plaintiff's Fourth Amendment rights, the Seventh Circuit reiterated that federal judges "do not enforce state-created procedures in the name of the Constitution." *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238 (1983)). The court found that "[w]hat the forcible entry and detainer law adds is a prior *procedure*" and the fact that an officer "violated state law does not mean that he transgressed against the Constitution of the United States." *Id.* at 300–01. Therefore, where a plaintiff brings a federal claim alleging false arrest, all the Fourth Amendment requires is probable cause to arrest. *See id.* at 301 ("The fourth amendment has its own procedural requirements: probable cause to make an arrest, a warrant to make an arrest entry, and a subsequent hearing to determine whether detention shall continue."). State laws such as the Forcible Entry and Detainer Act "neither add[] to nor subtract[] from these constitutional rules."

11

*Id*; *see also Wright v. Bogs Mgmt., Inc.*, 98 C 2788, 2000 WL 1774086, at 16 (N.D. Ill. Dec. 1, 2000) (Illinois Forcible Entry and Detainer Act is irrelevant for determining whether a § 1983 violation occurred when complainant was arrested for trespass); *see generally Brown v. Varan*, 322 Fed.Appx. 453, 454–55 (7th Cir. 2009) (unpublished) ("[T]he idea that a violation of state law automatically violates the Constitution has been repeatedly rejected.") (citing *Rivera v. Illinois*, 129 S.Ct. 1446, 1453–54 (2009), and *Degelman*, 29 F.3d 295).[2]  Accordingly, while Illinois may require its police to follow the forcible detainer statute, an officer's failure to do so does not create a cause of action under the Federal Constitution.

## II.    Deprivation of Property – Count I

Count I of Hurem's Complaint, though entitled "Deprivation of Property," appears to assert that the Officers violated the Illinois Forcible Entry and Detainer Act and the City of Chicago Residential Landlord Tenant Ordinance[3] by failing to protect him from the Quadris. Hurem alleges that "it is the express responsibility of the Police Department and its officers to enforce against illegal lockouts and to protect tenants such as the plaintiff from illegal actions by the landlord-defendant." (Complaint, ¶ 46.)

As an initial matter, Hurem has failed to develop any argument or comprehensible theory of liability relating to Count I of his Complaint. Nor has Hurem addressed any of the arguments

---

[2] Without citing *Degelman*, another district court in this Circuit recently reached the opposite conclusion. *See Miller v. Washington*, No. 11 C 1520, 2013 WL 1340590, at * 4 (N.D. Ill. Mar. 30, 2013) (finding that a reasonable jury could conclude that an officer lacked probable cause to arrest plaintiff in light of the Forcible Entry and Detainer Act). This Court respectfully disagrees with that holding and finds that *Degelman* controls in this case.

[3] The Chicago Residential Land Tenant Ordinance makes it "unlawful for any landlord or any person acting at his direction knowingly to oust or dispossess or threaten or attempt to oust or dispossess any tenant from a dwelling unit without authority of law." 5-12-160.

raised with respect to Count I in the Officers' Motion for Summary Judgment.[4] It is well-established in this Circuit that a party's failure to oppose or properly develop an argument with citation to relevant legal authority constitutes a waiver. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("A failure to oppose an argument permits an inference of acquiescence and 'acquiescence operates as waiver.' ") (quoting *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001)); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even when those arguments raise constitutional issues)."); *United States v. Amerson*, 185 F.3d 676, 689 (7th Cir. 1999) ("[G]iven our adversarial system of litigation, it is not the role of this Court to research and construct legal arguments open to the parties, especially when they are represented by counsel."). While a party opposing summary judgment does not have to cite additional legal authority when the Court is being asked to simply apply facts to an agreed upon legal standard, that is not the case here. Hurem simply makes no attempt whatsoever to counter arguments raised by the Officers in their motion. Accordingly, any defense to summary judgment regarding Count I is deemed waived.

However even if Hurem's opposition to summary judgment on Count I were not deemed waived, Count I does not survive the Officers' motion because an officer's failure to protect does not rise to the level of a constitutional violation. *See Windle v. City of Marion, Ind.*, 321 F.3d 658, 661 (7th Cir. 2003) (police officers' failure to protect middle school student from teacher's molestation did not violate due process, despite the officers' knowledge of the molestation);

---

[4] Hurem's response to the Officers' Motion for Summary Judgment focuses entirely on his Count II "Deprivation of Liberty" (false arrest) claim.

(citing *DeShaney v. Winnebago County Dept. of Soc. Svcs.*, 489 U.S. 189 (1989) (plaintiff could not bring suit under § 1983 against social workers who failed to take action to protect plaintiff's son from abuse from his father, finding that the purpose of the Due Process Clause of the Fourteenth Amendment "was to protect the people from the State, not ensure that the State protected them from each other."). Furthermore, to the extent Count I alleges a state cause of action, the Illinois Local Governmental and Governmental Employees Tort Immunity Act specifically bars failure to protect suits against police officers. *See* 745 ILCS 10/4-102 ("Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify and apprehend criminals."); *Beyer v. City of Joliet*, 910 N.E.2d 621, 623 (Ill. App. Ct. 2009) ("Generally, Illinois police officers enjoy absolute immunity for failure to provide police protection, prevent the commission of a crime, or to make an arrest."); *Hernandez v. Kirksey*, 715 N.E.2d 669, 673 (Ill. App. Ct. 1999) ("[T]he scope of section 4-102 is not limited to the police department's failure to control crime or to maintain a sufficient number of police officers, but applies to the adequacy of the police services provided" and "to injuries not inflicted criminally").

      Similarly, there is no constitutional violation even if the Court were to construe Count I as an allegation against the Officers for their affirmative conduct in evicting Hurem and not for failing to protect him from eviction. Just as a violation of Illinois law does not give rise to a federal claim, a failure to act in accordance with duties defined by the City of Chicago Municipal Code does not dictate relief by this Court. *See, e.g., Sroga*, 649 F.3d at 607 (failure to abide by a legal bulletin setting forth Chicago Police Department policy concerning an arrest standard for a

particular offense did not create a constitutional violation); *Degelman*, 29 F.3d at 301 (finding that as long as arresting officer "followed the procedures the Constitution proscribes for making arrests, his failure to afford [the plaintiff] additional procedures established by state law does not matter—not, at least, to a claim under the fourth amendment"); *Varan*, 322 Fed.Appx. at 455 (potential violation of Illinois law regarding eviction procedures did not rise to the level of a constitutional violation).

### III.     Excessive Force – Count IV

Count IV of Hurem's Complaint alleges that Officer Fontanetta used excessive force against Hurem in violation of his constitutional rights by "kneeing [him] in the chest repeatedly at the apartment, and later at the police station …." (Complaint, ¶ 66.) Hurem also alleges that the remaining officers witnessed the alleged beating and did not interfere, protest, or attempt to protect him from "assault by Fontanetta." (*Id.* ¶ 68.) Despite the serious allegations leveled against Officer Fontanetta in the Complaint, Hurem has since admitted that Fontanetta never hit, kneed, kicked, struck, or otherwise touched him. (Pl. 56.1 Resp. ¶ 46 ("Defendant Officer Fontanetta never touched Plaintiff …. RESPONSE: Admits."); *Id.* ¶ 47 ("Plaintiff admits that Defendant Fontanetta did not knee, kick, hit, or strike Plaintiff …. RESPONSE: Admits.")). Based on this admission, there is no factual dispute upon which Count IV can proceed. Accordingly, summary judgment is granted on Count IV as to all Defendants. Hurem may, however, proceed against Defendant Fontanetta and the other Defendant Officers for their actions in participating or failing to act with respect to the actions alleged in Count III.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment with respect to Counts I, II, and IV is granted. Only the excessive force claim against Officer Bedia (Count III) remains.

*Virginia M. Kendall*
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 12, 2013